```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
ARCH SPECIALTY INSURANCE COMPANY,          :
                                           :
                        Plaintiff,         :
                                           :          REPORT &
        -against-                          :          RECOMMENDATION
                                           :          19-CV-3314 (RRM) (SMG)
                                           :
ELLAS HEATING AND COOLING INC.,            :
                                           :
                        Defendant.         :
                                           :
----------------------------------------------------------------------x
```

STEVEN M. GOLD, U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Arch Specialty Insurance Company brings this diversity action against defendant Ellas Heating and Cooling Inc. for breach of contract, account stated, and unjust enrichment. Compl. ¶¶ 1, 22–57, Dkt. 1. Upon plaintiff's application and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of the Court noted defendant's default. Certificate of Default dated Nov. 4, 2019, Dkt. 11. Plaintiff now moves for default judgment against defendant. Not. of Mot. for Default J., Dkt. 12. The Honorable Roslynn R. Mauskopf referred plaintiff's motion to me for a report and recommendation. Order dated Apr. 7, 2020. For the reasons stated below, I recommend that plaintiff's motion for default judgment be granted.

## FACTUAL BACKGROUND

Plaintiff issued two commercial general liability policies to defendant, one for the period from January 22, 2016, to January 22, 2017 (the 2016–2017 policy) and the other for the period from January 22, 2017, to January 22, 2018 (the 2017–2018 policy). Compl. ¶¶ 6–7; Declaration of Sal A. Pellitteri ("Pellitteri Decl.") ¶¶ 5–6, Dkt. 12-6; see 2017–2018 Policy, Dkt. 12-7. The

policies provided defendant with coverage for certain liabilities in exchange for the payment of premiums. Compl. ¶¶ 9–10; Pellitteri Decl. ¶¶ 7–8. Defendant promised to pay certain "initial premiums" based on its estimated exposure during each policy period but agreed that those premiums were subject to increase or decrease based upon subsequent audits. Compl. ¶¶ 11–12; Pellitteri Decl. ¶¶ 9–10. For example, the 2017–2018 policy provides:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> \*   \*   \*
>
> **5. Premium Audit**
>
> a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.
>
> b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.
>
> \*   \*   \*

2017–2018 Policy at ECF pg. 46.

Another section, as amended by an endorsement to the 2017–2018 policy, similarly provides as follows:

> **Annual Minimum And Deposit Premium**
>
> The premium designated in this policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period.
>
> At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit period, the earned premium including any premium adjustments made by endorsement to this policy during the policy period shall

> be computed for such period and upon notice thereof to the Named Insured, shall become due and payable.
>
> If the total earned premium for the policy period is less than the premium designated as "advance premium", premium designated in this policy as "advance premium" is the minimum premium for the policy period indicated, and is not subject to further adjustment.

*Id.* at ECF pg. 33.

An audit conducted pursuant to the terms of the 2016–2017 policy revealed that the initial premium for this policy period had been underestimated. Compl. ¶ 14; Pellitteri Decl. ¶ 11. Defendant conceded that the initial premium had been underestimated in the amount of $44,671.41 and agreed to pay this amount to plaintiff pursuant to a settlement agreement. Compl. ¶¶ 15–16; Pellitteri Decl. ¶¶ 12–13; *see* Settlement Agreement, Dkt. 12-8. The settlement agreement provided that defendant pay the amount owed over a period of three months, with the first payment of $15,944.71 to be paid by June 1, 2017, and the remaining two payments to be made in equal installments of $14,363.35 by July 1, 2017 and August 1, 2017, respectively. Compl. ¶ 17; Pellitteri Decl. ¶ 14. Defendant made the first payment but not the two remaining payments. Compl. ¶ 18; Pellitteri Decl. ¶ 16. The settlement agreement specifically provides that

> if [defendant] does not make any payment under this Agreement and Release within five (5) days of the due date, the remainder of the Account Settlement Amount that has not been paid shall immediately become due and [defendant] shall incur, and pay to [plaintiff], interest on the unpaid remainder of the Account Settlement Amount at the rate of twelve percent (12%) per year, compounded daily, from the date of the premium audit, April 6, 2017, until the date of final and complete payment of the Account Settlement Amount and interest by [defendant].

Settlement Agreement at 1.

Plaintiff subsequently cancelled the 2017–2018 policy, effective July 7, 2017, Compl. ¶

3

8; Pellitteri Decl. ¶ 6, and conducted an audit revealing that the initial premium for this policy period had been underestimated in the amount of $79,108. Compl. ¶ 19; Pellitteri Decl. ¶ 22; *see* 2017–2018 Audit Report, Dkt. 12-9. Plaintiff billed and/or issued multiple demands for payment of the additional premium, but defendant failed to remit any payment of the amount due. Compl. ¶¶ 20–21; Pellitteri Decl. ¶¶ 23–24; *see* Premium Invoice, Dkt. 12-10. Plaintiff contends that defendant is also obligated to pay a New York Surplus Lines Tax equal to 3.6% of the additional premium and a New York State Stamping Fee equal to 0.2% of the additional premium, and it has calculated the total of these two amounts to be $2,982.37. Compl. ¶ 44; Pellitteri Decl. ¶¶ 25–26. As a result, plaintiff commenced this lawsuit for breach of contract, unjust enrichment, and account stated.

## DISCUSSION

### I. Legal Standard

Once the Clerk enters a defendant's default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

### II. Choice of Law

As an initial matter, because the policies do not appear to have choice of law provisions, the Court must determine what law should be applied to plaintiff's claims. "In a diversity action,

4

the choice of law rules of the forum state—here, New York—govern." *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 566 F. App'x 95, 97 (2d Cir. 2014) (citing *Krauss v. Manhattan Life Ins. Co. of New York*, 643 F.2d 98, 100 (2d Cir. 1981)). Under New York's choice of law rules, the focus in a contract dispute is on the contract's "center of gravity," which, in an insurance contract dispute, is "generally the state where the insured risk is located." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016). The insurance contracts here are "commercial general liability" policies insuring defendant's business activities. Compl. ¶¶ 6–7; Pellitteri Decl. ¶¶ 5–6. Defendant is a New York corporation with its principal place of business in New York. Compl. ¶ 3. Therefore, because the policies' "center of gravity" was in New York, I conclude that New York's substantive law governs.

### III.   Liability

Plaintiff has apparently abandoned its unjust enrichment claim and now moves for default judgment on its claims for breach of contract and account stated. Pl.'s Mem. of Law in Supp. of Mot. for Default J. ("Pl.'s Mem.") at 3, Dkt. 12-11. To state a claim for breach of contract under New York law, the plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); s*ee also Skyline Restoration, Inc. v. Great Am. Restoration Servs. Inc.*, 2019 WL 5150207, at *3 (E.D.N.Y. Aug. 5, 2019). These elements apply in actions by insurers for unpaid premiums; in *Fed. Ins. Co. v. CAC of NY, Inc.*, for example, the district court granted default judgment for breach of contract where the insurer alleged that it issued an insurance policy and insured the defendant in exchange for provisional premiums that were subject to change, the insurer conducted an audit to determine the proper premium amount and adjusted the premium accordingly, and the insured refused to

5

pay the adjusted premium price. 2015 WL 1198603, at *5 (E.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 1198423 (E.D.N.Y. Mar. 16, 2015).

Here, plaintiff has met the elements of breach of contract for both policies under New York law. As for the 2016–2017 policy, plaintiff alleges that it entered into a contract to provide insurance to defendant in exchange for premiums that were subject to adjustment based on an audit of defendant's actual exposure to risk. Compl. ¶¶ 9, 23, 26; Pellitteri Decl. ¶¶ 7, 10. Plaintiff further alleges that it performed its contractual obligations by actually providing insurance coverage to defendant. Compl. ¶ 24; Pellitteri Decl. ¶ 8. Following an audit revealing an underestimated premium for the 2016–2017 policy period, the parties entered into a settlement agreement, by which defendant agreed to pay plaintiff a total of $44,671.41 in three installments. Compl. ¶¶ 14–17; Pellitteri Decl. ¶¶ 11–14; *see* Settlement Agreement at 1. Plaintiff alleges that defendant made only the first required payment of $15,944.71 and then breached the settlement agreement by failing or refusing to make the remaining two payments. Compl. ¶ 18; Pellitteri Decl. ¶ 16.

As for the 2017–2018 policy, plaintiff similarly alleges that it entered into a contract to provide insurance to defendant in exchange for premiums—subject to adjustment based on an audit of defendant's actual exposure to risk—and payment of the New York Surplus Lines Tax and the New York State Stamping Fee. Compl. ¶¶ 9, 37, 40, 44; Pellitteri Decl. ¶¶ 7, 10, 25; *see* 2017–2018 Policy at ECF pgs. 33, 46. An audit was in fact conducted in accordance with the policy, and it was determined that defendant owed an additional $79,108. Compl. ¶ 19; Pellitteri Decl. ¶ 22; *see* 2017–2018 Audit Report at ECF pg. 8. Plaintiff further alleges that it performed its contractual obligations by providing insurance coverage to defendant as stated in the policy. Compl. ¶ 38; Pellitteri Decl. ¶ 8. Finally, plaintiff alleges that defendant breached the contract

6

and caused it damages by refusing to pay the additional premium amount and the New York Surplus Lines Tax and the New York State Stamping Fee. Compl. ¶¶ 46–47; Pellitteri Decl. ¶ 26. All of these allegations, now deemed admitted by defendant, are plainly sufficient to state claims for breach of contract under New York law. Therefore, I respectfully recommend that plaintiff's motion for default judgment on its claims for breach of contract be granted.

Plaintiff's claims for account stated, however, fail. "[A]n account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." *Fed. Ins. Co.*, 2015 WL 1198603, at *4 (internal quotation marks and citation omitted). However, where a claim for an account stated arises out of events already the subject of a valid and enforceable contract, recovery is precluded. *See Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp.*, 2019 WL 5394502, at *1 (E.D.N.Y. Oct. 22, 2019); *Arch Specialty Ins. Co. v. Kajavi Corp.*, 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019), *report and recommendation adopted*, 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019). Accordingly, because I find that plaintiff is entitled to a default judgment on the claims for breach of contract, the claims for account stated are precluded.

### IV.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *Greyhound Exhibitgroup*, 973 F.2d at 158. The court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2). However, a hearing is not required, as a court may conclude that detailed affidavits and documentary evidence are sufficient. *See Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

7

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007). In this case, no hearing is required to accomplish this result, because the recoverable damages are evident from the documentary evidence submitted by plaintiff, including (1) the settlement agreement; (2) the 2017–2018 policy; (3) the declaration by plaintiff's counsel, *see* Declaration of J. Gregory Lahr ("Lahr Decl."), Dkt. 12-1; (4) the declaration by Mr. Pellitteri, the Vice President of plaintiff's service company affiliate; (5) the audit report for the 2017–2018 policy; and (5) the invoice showing that payment was demanded from the defendant for the 2017–2018 policy.

The settlement agreement for the 2016-2017 policy requires defendant to pay plaintiff $44,671.41, of which $28,726.70 remains outstanding. Pellitteri Decl. ¶ 19. Pursuant to the terms of the agreement, plaintiff is also entitled to interest on the amount due at the rate of 12% per year, compounded daily, from the date of the premium audit on April 6, 2017, until the date of defendant's final and complete payment of the outstanding amount of $28,726.70 and all required interest. Pellitteri Decl. ¶¶ 17–18; Settlement Agreement at 1; *see Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 615 (2d Dep't. 1985) ("It is well settled that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment[.]"); *see also In re Pali Holdings, Inc.*, 491 B.R. 389, 394 (Bankr. S.D.N.Y. 2013) (same).

As for the 2017–2018 policy, the audit determined, based on defendant's actual exposure to risk, that defendant is obligated to pay an additional premium of $79,108. Pellitteri Decl. ¶

8

22; *see* 2017–2018 Audit Report at ECF pg. 8.  With respect to the New York Surplus Lines Tax and the New York State Stamping Fee, plaintiff alleges that defendant owes an additional $2,982.37.  Pellitteri Decl. ¶ 25.  The Court's calculations result in a slightly higher amount.  According to plaintiff, the defendant is obligated to pay a tax equal to 3.6% of the additional premium amount, Compl. ¶ 44, which equals $2,847.89.  For the fee, plaintiff claims defendant must pay an amount equal to 0.2% of the additional premium amount, *id.*, which computes to $158.22.  Therefore, the combined amount due for the tax and fee totals $3,006.11 not $2,982.37.

Plaintiff also seeks pre-judgment interest from the date of the breach of the 2017–2018 policy to the date of judgment.  Pl.'s Mem. at 12; Lahr Decl. ¶ 18.  "Under New York law, a plaintiff that prevails on a claim for breach of contract is entitled, as a matter of right, to prejudgment interest from the date of breach until the entry of final judgment." *Chadha v. Chadha*, 2020 WL 1031385, at *13 (E.D.N.Y. Mar. 2, 2020) (internal quotation marks and citations omitted); *see* C.P.L.R. § 5001.  The rate of interest under New York law is nine percent per annum.  C.P.L.R. § 5004.  The invoice is dated October 18, 2017 and states a payment due date of December 16, 2017.  Premium Invoice at 1.  Plaintiff is therefore entitled, under New York law, to nine percent pre-judgment interest on the $79,108 balance due on the invoice and the $3,006.11 due for the New York Surplus Lines Tax and the New York State Stamping Fee, or a total of $82,114.11, from the date of breach, December 16, 2017, until the entry of final judgment.

Next, "[p]ost-judgment interest is established by federal statutory authority and its accrual is 'calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

9

Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Mktg. Devs., Ltd. v. Genesis Import & Export, Inc.*, 2009 WL 4929419, at *11 (E.D.N.Y. Dec. 21, 2009) (quoting 28 U.S.C. § 1961(a)); *see also Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013) ("[U]nder § 1961, federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions."). Thus, plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a) on the damages awarded under the 2017–2018 policy from the date judgment is entered until it is paid.

Finally, plaintiff is entitled to recover the costs of litigating this action. *See* Fed. R. Civ. P. 54(d)(1); *see Mktg. Devs., Ltd.*, 2009 WL 4929419, at *12. Plaintiff's costs in this case include the court filing fee of $400 and fees for service of process equal to $40. Lahr Decl. ¶ 16; Receipt for Service of Process, Dkt. 12-4. Plaintiff is therefore entitled to recover $440 in costs.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motion for default judgment be granted and damages be awarded as follows:

   a. I recommend that plaintiff be awarded $28,726.70 in damages on its breach of contract claim under the settlement agreement for the 2016–2017 policy, together with interest on the amount due at the rate of 12% per year, compounded daily, from the date of the premium audit on April 6, 2017, until the date of defendant's final and complete payment of the outstanding amount and all required interest;

   b. I recommend that plaintiff be awarded $79,108 in damages on its breach of contract claim under the 2017–2018 policy, together with the New York Surplus Lines Tax and the New York State Stamping Fee totaling $3,006.11, and pre-judgment interest at a rate of nine percent per annum on the total amount of

    $82,114.11 calculated from December 16, 2017, until the date judgment is entered;

  c. I recommend that plaintiff be awarded post-judgment interest on the damages awarded under paragraph b at the statutorily prescribed rate from the date judgment is entered until the date the judgment is paid; and

  d. I recommend that plaintiff be awarded $440 in costs.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before July 27, 2020.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).  Plaintiff shall forthwith serve a copy of this Report and Recommendation upon the defaulting defendant at its last known address and file proof of service with the Court.

                 SO ORDERED.

                  /s/
                  Steven M. Gold
                  United States Magistrate Judge

Brooklyn, New York
July 13, 2020

U:\#JAV 2019-2020\Arch Specialty Ins. Co v. Ellas Heating & Cooling, 19-CV-3314\Final R&R.docx